UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM LEWIS ECCKLES, JR.,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:21-cv-761

Honorable Jane M. Beckering

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full $402.00 filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.**   **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility

(DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the MDOC and MDOC Director Heidi E. Washington. Plaintiff further sues the following DRF personnel: Warden Unknown Rewerts, Assistant Deputy Warden K. Nevis, and Physician Assistant Unknown Edger. Plaintiff sues all Defendants in their official capacity only.

Plaintiff has diabetes. He alleges that starting sometime in December 2020, during the COVID-19 pandemic, he went 36 days without insulin. At the time, DRF provided insulin pills at the medical dispensary window, but Plaintiff asserts that staff did not sanitize the window area. Plaintiff apparently refused to obtain insulin from the window until staff began sanitizing the area. Staff purportedly began sanitizing the area after Plaintiff filed a grievance about the issue. DRF further provided insulin injections but did so at a location outdoors. Plaintiff asks in his complaint how prisoners could be expected to receive injections in the arms, legs, or sides outdoors in December. When he posed the question to DRF staff, they responded that Defendant Rewerts and "Lansing" approved of administering the insulin injections outdoors. Apparently unwilling to get a shot outdoors in the cold, Plaintiff declined to receive insulin injections. During the 36 days Plaintiff went without insulin, medical staff allegedly failed to check on his health although a member of the nursing staff checked on a white prisoner after that prisoner went without insulin for 2 days.

Plaintiff's further allegations resume nearly six months later in June 2021. Plaintiff asserts that on June 9, 2021, he tested for COVID-19. Two days later, on June 11, 2021, either Defendant Rewerts or Defendant Nevis allegedly ordered Plaintiff moved to segregation purportedly because Plaintiff had refused to submit to the June 9 test and would instead need to quarantine. Plaintiff remained in segregation for seven days until an unspecified captain administered a rapid test and moved Plaintiff to another area to quarantine for nearly five more days.

Plaintiff seeks unspecified relief.[1]

**II.      Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

---

[1] To the extent that Plaintiff specifies any relief he seeks, he states that he "would like for this to never happen again to anyone else. There should be something in place to prevent this kind of thing from happening . . . . [W]e're supposed to have right[]s[;] we[']re suppose[d] to be treated with some level of respect." (Compl., ECF No. 1, PageID.8.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Reading the complaint with all due liberality, *see Haines*, 404 U.S. at 520, Plaintiff alleges violations of rights provided to him by the Eighth and Fourteenth Amendments.

**A.    Immunity**

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claims against the MDOC are properly dismissed on grounds of immunity.

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claims against the MDOC also are properly dismissed for failure to state a claim under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).

### B.  Official capacity

As noted above, Plaintiff sues the remaining Defendants in their official capacities only. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)). An official-capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Therefore, Plaintiff's claims against Defendants in their respective official capacities are actually claims against the State of Michigan. For that reason, to the extent that Plaintiff seeks damages, his claims again fail.

However, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Yet, the Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Plaintiff has been transferred to a different facility from where his alleged claims

occurred. Thus, to the extent that Plaintiff seeks declaratory or injunctive relief, his claims are also properly dismissed.

Even considering Plaintiff's action against Defendants in their individual capacities, Plaintiff's allegations still fail to state a claim.

### C. Eighth Amendment

Reading the complaint liberally, Plaintiff contends that Defendants violated his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v.*

6

*Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

7

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

As an initial matter, the Court must identify the challenged conduct. The complaint explains that DRF continued providing access to insulin for Plaintiff and other prisoners with diabetes. Notwithstanding the COVID-19 pandemic, nursing staff dispensed insulin pills from the medical dispensary window. Medical staff also provided insulin injections outdoors. Presumably the injections were provided outdoors to mitigate the risk posed by COVID-19. Clearly, Plaintiff does not contend that Defendants denied him insulin; he instead apparently challenges the conditions under which he could receive insulin. That is, Plaintiff challenges the requirement that he receive either insulin pills at medical dispensary window that had not been sanitized or insulin injections at a location outdoors in Michigan in winter.

Plaintiff has not alleged any facts that permit the Court to fairly conclude that Defendants were deliberately indifferent to his serious medical needs. To satisfy the objective prong of the deliberate indifference test, Plaintiff must allege facts to show that both receiving insulin pills at a window that had not been sanitized and receiving insulin shots outdoors in the winter posed substantial risks of serious harm. *See Farmer*, 511 U.S. at 834. The risks must have been obvious enough for even a layperson to notice. *See Blackmore*, 390 F.3d at 899. Plaintiff simply has not described the nature of the risks. He has not, for example, alleged that other prisoners contracted COVID-19 at the dispensary window, nor has he explained why he would need to touch the dispensary window. Similarly, Plaintiff does not allege that other prisoners getting insulin injections suffered injuries from exposure to the cold outdoors, nor has he specified any details such as the length of time he would have been exposed. For these reasons, Plaintiff's allegations fail to satisfy the objective prong of the deliberate indifference test.

8

Yet, Plaintiff also fails on the subjective prong. Plaintiff's allegations do not suggest that that any Defendant knew of a substantial risk and disregarded it. *See Farmer*, 511 U.S. at 837. Plaintiff has not explained, for example, why the nursing staff would have disregarded their own health if the failure to sanitize the dispensary window indeed posed a risk. Likewise, Plaintiff has not explained why medical staff would have disregarded their own health by spending time outdoors in the winter cold to administer insulin injections.

Plaintiff arguably also contests Defendant Edger's failure to check on Plaintiff during the 36 days Plaintiff went without insulin. Plaintiff does not allege that he suffered any deleterious effects resulting from the lapse in his treatments, that Defendant Edger ignored kites complaining of any medical issue he faced, or even that any request to be seen went unanswered. Plaintiff fails to allege any facts to suggest that he was at substantial risk of serious harm or that Defendant Edger knew of the risk and disregarded it. Consequently, the allegations are too scant to state a plausible claim for relief. *See Twombly*, 550 U.S. at 570.

In short, Plaintiff has failed to allege facts sufficient for the Court to draw a reasonable inference that any Defendant has acted unlawfully. Therefore, although the Court is sympathetic to the challenges Plaintiff faced—and continues to face—in prison during the COVID-19 pandemic, Plaintiff's allegations fail to state an Eighth Amendment claim against any Defendant. *See Iqbal*, 556 U.S. at 678–79.

### D.   Fourteenth Amendment Due Process

Plaintiff's temporary placement in segregation for seven days fails to state a due process claim. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest

protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey*, 62 F.3d at 790–91; *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker*, 155 F.3d at 812–23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty

interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Clearly, Plaintiff's seven-day placement in segregation falls well short of the 30-day placement at issue in *Sandin* and the 61-day placement at issue in *Joseph*. The Court does not condone needless placement of prisoners in segregation. The Court further acknowledges that Plaintiff was undoubtedly distressed at the time he was placed in segregation knowing that he had tested for COVID-19. That distress could adversely affect Plaintiff's mental health in the manner he describes in the complaint. Nevertheless, for the reasons state above, Plaintiff's allegations do not state a due process claim against any Defendant.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   May 31, 2022                               /s/ Jane M. Beckering
                                                                                  Jane M. Beckering
                                                                                   United States District Judge